## Case No. 14,427.

### UNITED STATES v. ALDEN.

[1 Spr. 95; 7 Law Rep. 469.] [1]

Circuit Court, D. Massachusetts. Oct., 1844.

SEAMEN—PUNISHMENT—RIGHT OF MASTER TO USE —MALICE.

1. The master of a ship has a right to use coercive measures, to compel obedience to his lawful orders.

2. In case of desertion and persistent refusal to perform duty, the master may inflict punishment, and use means of coercion; but they must not be such as would be permanently injurious to the health or constitution of the seaman.

3. Where the mode of punishment is unjustifiable, the question whether it was from malice, hatred, or revenge, is a question of fact, to be determined by the jury.

Silas P. Alden, of Fairhaven, master of the whaling bark Bruce, was tried upon an indictment, under the United States statute of March 3d, 1835, § 3 [4 Stat. 776], for imprisoning, "from malice, hatred and revenge, and without justifiable cause," Barzillai McFaden, one of the seamen. It appeared that McFaden, a young man from Maine, who had worked a short time as waiter in one of the Boston hotels, shipped on board the Bruce as a green hand. In the course of the voyage, he did not appear to be an energetic seaman, and was roughly dealt with by the captain. At one of the southern islands he deserted from the ship, and upon being retaken, he refused to do duty. The captain informed him that he should keep him in irons until they were out at sea, and then should imprison him in the run of the ship, until he returned to duty. Accordingly, in a day or two, the captain took off his irons, and offered McFaden the alternative of remaining in the run, or returning to duty. The latter said he would do no more duty, but objected to the run, as an improper place of imprison-

ment. The captain informed him there was no other proper place in the ship, and accordingly placed him in the run, under the cabin floor, and ordered the steward to give him bread and water only. The place of imprisonment was low and contracted, and a most wretched place of confinement; the sailor being unable to stand up, or sit erect in it, and there being but very little light. But the captain repeatedly offered to take him out, if he would go to work, which McFaden constantly refused to do. He remained there about five months, until the ship arrived home, when he was discharged. Just before the termination of the voyage, he informed the captain that his health was suffering, and he was then allowed to come into the cabin occasionally. He became very much emaciated, and is still suffering from the effects of his confinement. He testified on the stand with great fairness, exhibited no feeling against the captain, and frankly admitted that he might have been released at any time, if he would have consented to perform duty. The whole evidence showed one of the most remarkable instances of stupidity, or obstinacy, or both, ever exhibited in a court of justice.

F. Dexter, U. S. Dist. Atty.
T. G. Coffin, for defendant.

SPRAGUE, District Judge, in charging the jury, instructed them, that in no view of the evidence, was there any legal justification, either of the desertion, or of the subsequent persistent refusal of duty by McFaden. That the master had a right to inflict reasonable punishment for the offence of desertion, and to use means of coercion to compel obedience to his orders, and the performance of duty; but that the punishment inflicted, and the means of coercion used, must not be such as would be likely to be permanently injurious to the health or constitution of the seaman. That there might, indeed, be extreme cases, as of mutiny, where the master might resort to extreme measures, even to the taking of life. But the present did not partake, in any degree, of that character. It was a mere question of discipline, and compelling the performance of service. The authority of a master over his crew has been sometimes likened to that of a parent over his children; but there is a very material difference, particularly in this, that the power of the master is given only for the purposes of the voyage, and is to be limited in its use to those purposes. But to the parent belongs the whole moral training of his child; and the discipline exercised may have reference not only to his whole life, but also to his future well-being. If the imprisonment, in this case, was such, from its nature and duration, as was likely to be permanently injurious to the health or constitution of the seaman, then it was not justifiable. It was necessary for the government to prove, not only that

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

the imprisonment was unlawful, but that it was inflicted by the master from malice, hatred, or revenge; and that was a question of fact, to be determined by the jury, upon the consideration of all the evidence. The judge made some further remarks upon this point, and upon the testimony. The jury returned a verdict of guilty.